**GENERAL ACCIDENT FIRE & LIFE AS-SURANCE CORP., Ltd., et al., Appellants,**

**v.**

**Thelma JUDD et al., Appellees.**

Court of Appeals of Kentucky.

March 18, 1966.

Joseph C. O'Bryan, Louisville, for appellants.

Thomas B. Givhan, Shepherdsville, for appellees.

PALMORE, Judge.

The appellee, Thelma Judd (hereinafter called plaintiff), bought a new car on December 16, 1963, for $3231.31. Nine days later it was badly damaged in a collision with another automobile in Louisville. The loss was covered by the $50 deductible collision damage provisions of an insurance policy issued by the appellants (hereinafter collectively called the company). At the company's request plaintiff secured and submitted two repair estimates in the respective amounts of $1,148.98 and $1,140.26. Meanwhile the company caused a separate estimate to be made by Automotive Inspection Service, a company engaged in the business of appraising accident damage to automotive equipment for insurance companies. This estimate was in the amount of $889.69, and on January 13, 1964, the company sent plaintiff its draft for $849 (making a $9.31 error). The draft provided that endorsement by the payee would constitute acceptance of the face amount in full settlement of the claim. Plaintiff refused to accept it and the company declined to negotiate further.

Plaintiff brought this suit against the company on June 26, 1964, demanding recovery for the diminution in value of her automobile (less $50), $20 for towage, 50¢ per day for past and future storage, and $5 per day for past and future loss of use of the car. She was permitted to prove the last two items to the date of the trial, for a total of 326 days. The jury returned a verdict of $3,513 and judgment followed accordingly. The company appeals.

The insurance policy required the company to pay the amount of loss caused by collision (less $50) and to pay towing and labor costs necessitated by disablement of the automobile. The loss liability was made subject to this limitation:

"The limit of the company's liability for loss shall not exceed the actual cash value of the property, or if the loss is of a part thereof the actual cash value of such part, at time of loss, nor what it

would then cost to repair or replace the property or such part thereof with other of like kind and quality, nor, with respect to an owned automobile described in this policy, the applicable limit of liability stated in the declarations," etc.

Among the general conditions of the policy it was provided that the company "may pay for the loss in money; or may repair or replace the damaged * * * property," etc., and the insured was required in the event of loss "to protect the automobile" at the company's reasonable expense.

An automobile dealer testified that the market value of plaintiff's automobile was $3,000 immediately before the accident and somewhere between $1,300 and $1,500 thereafter. The jury was instructed that it was the company's duty (1) to pay the reasonable cost of repairs to restore the vehicle to as good condition as it was before the collision, not to exceed the sum of $1,700, (2) to pay reasonable towing costs not exceeding $20, (3) to pay reasonable storage costs incurred since the accident, not exceeding 50¢ per day, unless plaintiff could or should have mitigated the damages without violating the provisions of the insurance contract, and (4) to compensate plaintiff not exceeding $5 per day for the loss of use, if any, of the car for business purposes during such time as was reasonably required for her to replace it, provided that the jurors believed the company had unreasonably delayed replacing or repairing the car.

From the amount of the verdict it is apparent that the jury awarded $1,700 for repairs, $20 for towage, 50¢ per day for storage and $5 per day for loss of use of the car for the full period of 326 days between the date of the accident and the conclusion of the trial.

Although plaintiff says, and the company seems to agree, that this action "sounds" in both contract and tort, it is nothing more than a suit on and for breach of a contract. The company's obligation was to pay money,

with the alternative option of repairing or replacing the damaged property. It was entitled to and did choose to pay money. If the automobile could be put in as substantially good physical condition as it was before the accident, the company's obligation was to pay the amount reasonably required for that purpose.

■ There was no evidence whatever that plaintiff's automobile could not have been so restored. It may be true, as an automobile dealer testified, that a car that has been wrecked can never be fully restored to its market value before the accident, but the insurance contract does not require a restoration of *value;* it requires only a restoration of *physical condition.* The most that anyone estimated as the cost of accomplishing that purpose was $1,148.98. Hence the first instruction, authorizing recovery up to $1,700 for repairs, was unauthorized and erroneous. Cf. Niagara Fire Ins. Co. v. Hoffman, Ky., 253 S.W.2d 617 (1952).

We come then to the other items of recovery authorized by the instructions. The $20 towage charge is not disputed, but the company challenges the allowance of storage and lost use.

■ The traditional measure of recovery for failure to pay money due under contract is the amount agreed to be paid. Clark v. Life & Casualty Ins. Co., 245 Ky. 579, 53 S.W.2d 968, 84 A.L.R. 1420 (1932); 22 Am.Jur.2d 97 (Damages, § 64); 29A Am. Jur. 776 (Insurance, § 1696). If the amount is liquidated, interest follows as a matter of right; if not, "the allowance of interest is in the discretion of the court or jury trying the case." Congoleum-Nairn v. M. Livingston & Co., 257 Ky. 573, 78 S.W.2d 781, 785 (1935); Tri-State Developers, Inc. v. Moore, Ky., 343 S.W.2d 812 (1961); Restatement of Contracts, § 337(b).

The opinion in Motors Insurance Corporation v. Jackson, Ky., 340 S.W.2d 610

688

(1960), though it contains a dissertation from which it might be inferred that consequential damages other than interest are allowable, nevertheless concludes as follows: "Even had the evidence met the requirements of proof of such claimed consequential damages, there would have been no legal liability under the facts of this case. See Annotation, 'Damages recoverable from insurer for failure or delay in making payments due under contract.' 37 A.L.R.2d 538." That conclusion is in accordance with what we consider to be the correct legal premise. Motors Insurance Corporation v. Howard, Ky., 291 S.W.2d 522 (1956), in which the insurance company elected and actually undertook to repair the insured vehicle, is therefore distinguishable from this case, in which the company promptly elected to pay money instead.

 Plaintiff suggests that the consequential damages represented by storage charges and lost use of the car are or should be allowable as punitive damages. However, punitive damages ordinarily are not recoverable for a breach of contract. Cumberland Tel. & Tel. Co. v. Cartwright Creek Tel. Co., 128 Ky. 395, 108 S.W. 875, 878, 32 Ky. Law Rep. 1357 (1908). And even if they were, plaintiff's complaint did not demand punitive damages as such, nor were these items submitted to the jury on that theory.

In concluding, it occurs to us that the first and fundamental question for submission to the jury in this case was whether plaintiff's automobile could have been restored in substantially as good physical or operating condition as before the accident for the sum of $899 or less. If so, plaintiff has no cause of action, since the company offered her $849. She did not demand the $20 towage charge until the suit was brought. We do not imply that the company would not remain obligated to pay her these amounts, but only that if the company is found not to have been in default it should not be burdened with the costs of litigation.

The cause is reversed and remanded for a new trial.